IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JASON POLEN,** *individually and on behalf of others similarly situated*, | : |
| | : |
| Plaintiff, | : Case No. 2:22-cv-00085 |
| | : |
| v. | : Chief Judge Algenon L. Marbley |
| | : Magistrate Judge Kimberly A. Jolson |
| **JSW STEEL USA OHIO, INC.,** | : |
| | : |
| Defendant. | : |

**OPINION & ORDER**

**I.  INTRODUCTION**

This matter is before this Court on Defendant's Partial Motion to Dismiss (ECF No. 16) and Plaintiff's Motion for Conditional Certification (ECF No. 41). This case involves a labor dispute between a former steel plant production worker, on behalf of himself and all others similarly situated, and a steel producer. Defendant's Partial Motion to Dismiss (ECF No. 16) focuses on "donning and doffing" allegations in Plaintiff's initial complaint, which have since been removed from the Amended Complaint. As such, that motion is **DENIED AS MOOT**. Plaintiff's motion, styled as a Motion for Conditional Certification (ECF No. 41), is **GRANTED IN PART and DENIED IN PART**. Plaintiff has demonstrated a "strong likelihood" that the employees to whom he asks this Court facilitate notice are "similarly situated" to himself with respect to one of his claims. But the proposed notice is **NOT APPROVED** and must be modified as set forth herein.

## II. BACKGROUND

Plaintiff Jason Polen alleges that Defendant JSW Steel USA Ohio, Inc. ("JSW Steel"), a subsidiary of a multinational steel producer based in India, has violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§ 4111.03, .08; and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15.

Plaintiff was employed as a utility operator at JSW Steel's production facility in southeastern Ohio from 2017 until October 2021. (*See* ECF No. 37 ¶¶ 5–6). The facility produces hot-rolled coiled bands of steel, which JSW Steel then supplies to customers throughout the United States. (*Id.* ¶ 12). Operators, as well as other production personnel at the facility, are hourly, non-exempt employees as defined under FLSA and the state statutes. (*Id.* ¶ 6 & n.2). Plaintiff alleges that, during his period of employment, Defendant engaged in two practices that deprived him of full compensation.

*First*, as alleged in the Amended Complaint, JSW Steel had an unlawful "pay to shift" policy. Employees at the facility typically worked 12 hours shifts; for example, if the day shift began at 7:00 a.m., it would run until 7:00 p.m., while the night shift started at 7:00 p.m. and ended at 7:00 a.m. (*See id.* ¶ 22). But Polen and other production employees also performed 20–30 minutes of work each shift prior to the scheduled start time. (*See id.* ¶ 26). Production employees would arrive early for their shifts in order to speak with and receive directions from the operator on duty. (*See id.* ¶ 24). Polen and other production employees would also assist the colleague whom they were replacing on the line with any final tasks and then have a "pass-down" meeting with the colleague. (*Id.* ¶ 25). Similarly, Polen and other production employees would continue working beyond the scheduled end of their shifts, to finish their assignment and assist incoming

2

colleagues with their pre-shift preparations. (*See id.* ¶ 27). But instead of compensating employees for the time they spent on pre- and post-shift work, JSW Steel paid only for the time associated with their scheduled shift. (*See id.* ¶¶ 27–30). In short, Polen and other production employees were paid based on their shift time, not their time worked. This "pay to shift" policy deprived Polen and others of rightfully earned overtime pay.

*Second*, Polen alleges that JSW Steel classified nondiscretionary production bonuses as distinct from employees' regular pay for production shifts, which in turn unlawfully depressed the overtime pay rate. Employees at the production facility were given a non-discretionary bonus each year based on their amount of production. (*Id.* ¶ 32). This bonus was paid to Polen and others separate from their regular pay for the production shifts he worked. (*See id.* ¶ 34). Typically, the FLSA "requires bonus payments to be included as part of an employee's regular rate of pay in computing overtime," since the overtime rate must be one and one-half times the regular rate of pay. *Overtime Pay*, U.S. DEP'T OF LAB., https://www.dol.gov/general/topic/wages/overtimepay (last visited October 10, 2023). But, Polen alleges, Defendant did not include the non-discretionary bonuses as part of the "regular rate." (*See* ECF No. 37 ¶ 35). As such, the rate Polen and others received for overtime work was smaller than it should have been had Defendant calculated the "regular rate" correctly.

Polen filed suit in January 2022, alleging that JSW Steel's compensation practices violated federal and state wage laws. (*See generally* ECF No. 1). He brought the FLSA claim as a collective action pursuant to 29 U.S.C. § 216 and the state law claims as a Rule 23 class action. The case was stayed on request of the parties in March 2022; the stay was lifted in November 2022. (*See* ECF No. 34). At that point, the Court granted Plaintiff 21 days to respond to Defendant's Partial Motion to Dismiss (ECF No. 16), which had been filed prior to the stay but

had not been addressed, or to file an amended complaint. (*See* ECF No. 36). Plaintiff chose the latter option (ECF No. 37), and then moved for "conditional certification" under the FLSA in December 2022, only as to the "pay to shift" claim. (ECF No. 41). Plaintiff explicitly disavowed any intention to move for conditional certification of a collective as to his "overtime rate" claims. (*See* ECF No. 41 at 1 n.1). In May 2023, the Sixth Circuit decided *Clark v. A&L Homecare & Training Ctr., LLC*, raising plaintiffs' evidentiary burden for "conditional certification," which *Clark* also explained is better conceptualized as "court-facilitated notice" of the suit to other employees. 68 F.4th 1003, 1009–11 (6th Cir. 2023). Following the decision, the parties submitted supplemental briefing addressing the implications of *Clark* for Plaintiff's motion. (ECF No. 51; 55; 56). Plaintiff's motion, originally styled as for "conditional certification," is now ripe for review.

### III. STANDARD OF REVIEW

The FLSA allows employees to bring collective actions against employers for unpaid wages where the employees are "similarly situated" to one another. *See* 29 U.S.C. § 216(b). "Similarly situated" employees can "opt into" a collective by filing a written consent. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Of course, they can join only if they are aware of the suit in the first place. In order to facilitate notice to potential plaintiffs, courts allow for a two-step approach to determine whether an FLSA action can proceed as a collective.

At the first step, traditionally known as "conditional certification," a FLSA plaintiff asks the district court to facilitate notice of the suit to other employees who are "similarly situated" to the original plaintiff. *See Knecht v. C & W Facility Servs., Inc.*, 534 F. Supp. 3d 870, 873 (S.D. Ohio 2021); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (holding that the FLSA gives "district courts [] discretion, in appropriate cases, to implement 29 U.S.C. § 216(b)

. . . by facilitating notice to potential plaintiffs"). This step typically takes place prior to the completion of discovery, and plaintiffs bear the burden of showing that the proposed class members are "similarly situated" to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). If the court allows court-facilitated notice at the first phase, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015). This decision to permit the distribution of a court-supervised notice to potential opt-in plaintiffs "has zero effect on the character of the underlying suit." *Clark*, 68 F.4th at 1009.

After notice has been sent to other employees and "when merits discovery is complete[,] . . . the court takes a closer look at whether those 'other employees' are, in fact, similarly situated to the original plaintiffs." *Id.* at 1008. It is only at this point—step two—that the trial court determines conclusively whether the opt-in plaintiffs are "similarly situated" to the lead plaintiff and thereby grants or denies final approval of the collective. *McElwee v. Bryan Crowdery Inc.*, No. 2:21-cv-1265, 2023 WL 4423880, at *11 (S.D. Ohio July 10, 2023).

Historically, district courts, in determining whether to grant "conditional certification" at the first step, have only required that a plaintiff "'make a modest factual showing' that he is similarly situated to other employees he is seeking to notify." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). This was a "fairly lenient" standard that "typically result[ed] in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (citation omitted).

But the Sixth Circuit's recent decision in *Clark* heightened the evidentiary showing required of plaintiffs before a court may facilitate notice to other potential plaintiffs.[1] *Clark*, 68 F.4th at 1011. Instead of the previous, "modest factual showing" required of plaintiffs, they now "must show a 'strong likelihood' that those employees [whom they seek to notify] are similarly situated to the plaintiffs themselves." *Id.* In other words, the movant must "demonstrate to a certain degree of probability" that she will be able to show that the employees she seeks to notify are "similarly situated" before the court issues its final decision at the end of step two. *Id.*

"Strong likelihood," in this context, is analogous to the standard faced by a plaintiff seeking a preliminary injunction. *Id.* at 1010–11. In fact, the *Clark* court went so far as to outright "adopt" the "strong likelihood" portion of the preliminary injunction standard. *Id.* at 1011. Nonetheless, in response to Plaintiff's Supplemental Memorandum addressing the *Clark* standard, Defendant argues that the evidentiary burden on Plaintiff at this stage is instead akin to the burden he would face on a Rule 56 motion for summary judgment. (ECF No. 55 at 3–4). But as the *Clark* court explained, its analogy to the preliminary injunction standard is appropriate specifically because both determinations are "provisional"—they take place before the factual record is fully developed. *Clark*, 68 F.4th at 1011. Summary judgment, on the other hand, occurs much later in the course of litigation, when both sides have been able to engage in full discovery. Defendant's suggestion that Plaintiff must have proffered enough evidence of similarity at this preliminary stage such that he could survive summary judgment is unavailing.

---

[1] The Sixth Circuit also explained that a court's decision to facilitate notice of the suit to other employees should not be characterized "as a 'certification,' conditional or otherwise" because "unlike a Rule 23 class action, an FLSA collective action is not [a] representative" action. *Clark*, 68 F.4th at 1009. Instead, plaintiffs who opt into a FLSA action become parties to the case, so long as the court conclusively determines that they are, in fact, "similarly situated" to the original plaintiffs. *Id.* As a result, this Court refers to the FLSA notice determination as "court-facilitated notice."

6

It is important to note that *Clark* does not disturb the traditional meaning of "similarly situated." *See id.* at 1020 (White, J., concurring in part and dissenting in part) (noting that the decision "does not address the underlying threshold for FLSA similarity, which remains the same" (citations omitted)). Whether particular employees are similarly situated is a fact-specific inquiry. *Id.* at 1010. The FLSA itself does not define "similarly situated," but courts have traditionally considered "a variety of factors," including: (1) "factual and employment settings of the individual[] plaintiffs," (2) "the different defenses to which the plaintiffs may be subject on an individual basis," (3) "the degree of fairness and procedural impact of certifying the action as a collective action," *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), and (4) "whether the named plaintiff submits affidavits from opt-in plaintiffs," *Gifford v. Northwood Healthcare Grp.*, LLC, No. 2:22-CV-4389, 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023). None of these factors alone is determinative. *Hogan v. Cleveland Ave Rest., Inc.*, No. 2:15-CV-2883, 2023 WL 5745439, at *4 (S.D. Ohio Sept. 6, 2023).

Similar, of course, does not mean identical. *See Comer*, 454 F.3d at 546–47. And "similarly situated" "is less stringent than [the] Rule 20(a) requirement that claims 'arise out of the same action or occurrence' for joinder to be proper, or even Rule 23(b)(3)'s requirement that common questions predominate for a Rule 23(b)(3) class to be certified." *O'Brien*, 575 F.3d at 584. It is enough for plaintiffs to show that "they suffer from a single, FLSA-violating policy," and that "proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585.

The second step of the collective determination remains "relatively unchanged" by *Clark*. *Foley v. Wildcat Invs., LLC*, No. 2:21-CV-5234, 2023 WL 4485571, at *2 (S.D. Ohio July 12, 2023). If the court concludes, at the close of discovery, that all plaintiffs have shown by a

7

preponderance of evidence that they are in fact "similarly situated," the opt-in plaintiffs become parties to the suit. *Id.*

## IV. LAW & ANALYSIS

### A. Motion to Dismiss

The Court first addresses Defendant's Partial Motion to Dismiss. (ECF No. 16). In the motion, Defendant argues that Plaintiff's "donning and doffing" allegations fail to state a claim. Plaintiff's initial complaint included the allegation that part of the work he did pre- and post-shift included donning and doffing personal protective equipment ("PPE"); he alleges that he was not, however, compensated for that work. (*See* ECF No. 1 ¶¶ 21–22). In response to that allegation, Defendant highlighted caselaw in this Circuit and other circuits holding that "employees are not entitled to compensation for donning and doffing uniforms and equipment that could otherwise be done at home." (ECF No. 16) (citing *Bamonte v. City of Mesa*, 598 F.3d 1217, 1227–28 (9th Cir. 2010)).

In the Amended Complaint, Plaintiff has removed all references to donning and doffing PPE. As the target of Defendant's Partial Motion to Dismiss no longer exists, the motion is **DENIED AS MOOT**.

### B. Motion to Facilitate Notice[2]

Next, Plaintiff asks this Court to facilitate notice to potential plaintiffs for the collective action *sub judice*, arguing that there is substantial evidence that other employees at the production facility are "similarly situated" to Plaintiff in that they were unlawfully deprived of full

---

[2] Plaintiff styles his initial filing as a "motion for conditional certification," and accordingly asks the Court to "[c]onditionally certify[] this case as a collective action." (ECF No. 41 at 1). As discussed above, in keeping with the Sixth Circuit's instruction in *Clark*, it is more appropriate to say that Plaintiff is asking the Court to facilitate notice to potential plaintiffs or, perhaps, for conditional approval of the collective. *See Clark*, 68 F.4th at 1009.

compensation under the "pay to shift" policy. This Court concludes that Plaintiff has shown a "strong likelihood" that he will be able to demonstrate that he and other employees subject to the alleged "pay to shift policy" are "similarly situated."

Plaintiff's Motion to Facilitate Notice requests at the outset that this Court send notice of the litigation to the following collective:

> All current and former Ohio hourly, non-exempt production employees of Defendant who were paid for forty (40) or more hours of work in any workweek beginning March 3, 2019 and continuing through the final disposition of the case.

(ECF No. 41 at 1). But Plaintiff only makes arguments regarding his first FLSA claim—the "pay to shift" claim—in his Motion to Facilitate Notice. In fact, he explicitly disavows any intention to address his second FLSA claim—which, as mentioned above, is about underpayment of overtime wages due to the non-inclusion of non-discretionary bonus payments in Defendant's calculation of the "regular rate" of pay. (*Id.* at n.1). As a result, this Court focuses its "similarly situated" analysis on Plaintiff's "pay to shift" claim.

In support of his motion, Plaintiff submits the declarations of seven (7) other opt-in plaintiffs, each of whom alleges in nearly identical language that he regularly began working at least 20–30 minutes prior to the start of his scheduled shift and that he regularly worked beyond the scheduled end of his shift to complete his tasks and conduct a pass-down meeting with the colleague who had come to relieve him—but that he was only paid for his scheduled shift rather than for the time he worked. (*See, e.g.*, ECF No. 41-3 at ¶¶ 11–14). The declarants further allege that their early arrivals at the facility were not voluntary, but rather that their supervisors expected production workers to arrive at their workstations early. (*See, e.g., id.* ¶ 8). They assert that they witnessed other colleagues at JSW Steel have the same experience. (*See, e.g., id.* ¶¶ 15–17).

The Court first acknowledges that Plaintiff appears to have conflated sheer volume with substance. Plaintiff argues that "this Court has regularly granted conditional certification in cases where plaintiffs submitted substantially less evidence than Named Plaintiff has here," simply because the Court has facilitated notice in cases with fewer declarations than Plaintiff has presented. (ECF No. 41 at 8, 9). But the number of declarations presented says nothing on its own about the strength of a litigant's evidence; it is the substance of the declarations, not the quantity, that matters. Consider, for example, a FLSA case in which a decision-maker at the employer attests that the employer had an unlawful policy. That may well constitute more "substantial" evidence than two (or more) declarations from employees about their experiences. Thus, simply "providing a greater number of declarations" says little about whether a plaintiff has met her burden. (*Id.* at 9; *see also* ECF No. 47 at 4–5).

Nevertheless, this Court does find that the declarations submitted by Plaintiff establish a "strong likelihood" that the other employees to whom he asks this Court facilitate notice are "similarly situated" to himself with respect to the "pay to shift" claim. *See Clark*, 68 F.4th at 1011. The fact that seven other production employees at Defendant's facility had the same experience of clocking in before the scheduled start of their shifts and clocking out after the scheduled end of their shifts, while not receiving compensation for that extra work is substantial evidence of similarity and of what appears to be a "widespread discriminatory plan." *See Fairfax v. Hogan Transp. Equip., Inc*. No 2:16-cv-680, 2017 WL 4349035, at *2 (S.D. Ohio 2017). Moreover, the declarants specifically attest that "JSW supervisors expected production workers" to arrive early and begin working, suggesting that this policy was uniform and at least *de facto* official. (*See, e.g.*, ECF No. 41-5 ¶ 8). Although most of the declarants were "operators," they noted that this

10

experience was common for all production employees at JSW Steel based on their observations and conversations with coworkers in different production roles. (*See, e.g.*, *id.* ¶ 17).

Defendant raises several arguments in response. *First*, Defendant challenges the substance of the declarations. In particular, Defendant takes issue with the declarations because they fail to identify with specificity the source of the alleged "pay to shift" policy or the supervisors of the declarants. (ECF No. 46 at 3). But the declarations do not fall short simply for failing to identify the individual supervisors of the declarants, particularly when each declarant represents that they have personal knowledge that the "pay to shift" policy broadly affected production employees at the facility. Plaintiffs are similarly situated to one another if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *McElwee*, 2023 WL 4423880, at *12 (quoting *O'Brien*, 575 F.3d at 585). Defendant also argues that Plaintiff and declarants' alleged *de facto* policy is implausible because it contradicts the policies in JSW Steel's handbook. But "the mere existence of a written policy prohibiting off-the-clock work says nothing about whether that policy was actually enforced or followed." *Mudrich v. Sygma Network, Inc.*, No. 2:21-cv-4932, 2022 WL 4395678 (S.D. Ohio Sept. 23, 2022). Moreover, the Court's role at this stage, is not to "consider the merits of the claims, resolve factual disputes, or decide substantive issues." *Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 734 (S.D. Ohio 2016). After all, whether Defendant promulgated a "pay to shift" policy—informally, or otherwise—speaks directly to the merits of the case. Instead, the relevant inquiry here is whether Plaintiff has shown that he and other employees are "similarly situated" with respect to the common "FLSA-violating policy" Plaintiff alleges. *O'Brien*, 575 F.3d at 585. He has.

*Second*, throughout its briefing, Defendant suggests that this Court should not regard the sworn declarations submitted by Plaintiff as credible because they contain parallel language and are "uncorroborated." (*See* ECF No. 46 at 2, 3; ECF No. 55 at 1, 2, 4; *see also* ECF No. 57 at 3). But "there is no rule that requires plaintiffs to compose affidavits in their own words, without the assistance of counsel." *Headspeth v. TPUSA, Inc.*, No. 2:19-CV-2062, 2020 WL 3818922, at *4 (S.D. Ohio July 8, 2020). In fact, "[t]he 'uniformity that Defendant derides' can and will be taken as 'a substantial indicator in favor of the plaintiffs being similarly situated.'" *Id.* Moreover, the multiple declarations that Plaintiff submitted are mutually corroborative. *See Burgess v. Wesley Fin. Grp., LLC*, No. 3:16-CV-1655, 2017 WL 1021294, at *4 (M.D. Tenn. Mar. 16, 2017) (noting in the FLSA court-facilitated notice context that "the declarations submitted . . . corroborate each other").

*Third*, in its response to Plaintiff's Supplemental Memorandum on the *Clark* opinion, Defendant raises for the first time that some members of the putative collective may be subject to an arbitration provision issued as part of an employee handbook shortly after Plaintiff left his role at JSW Steel. (ECF No. 55 at 3–4). The Sixth Circuit recently acknowledged that a court may consider the defense of mandatory arbitration at this stage of the litigation. *Clark*, 68 F.4th at 1012. As a result, Defendant argues that Plaintiff is not "similarly situated" with anyone who was employed by JSW Steel after the issuance of the handbook—including Declarants Church, Lemmon, Loggie, Singleton, and Stull—because, in its view, those employees are subject to the arbitration provision and therefore, cannot enter into a FLSA collective. In support of this proposition, Defendant attaches portions of a JSW USA Team Member Handbook, effective November 14, 2021, which includes a signature page that requests acknowledgement of receipt and solicits agreement to an arbitration provision. The provision reads:

12

> I agree to first seek to mediate any dispute with JSW Steel with a mediator from the American Arbitration Association or similar organization trained and experienced in employment disputes. If mediation is not successful, I agree to submit the dispute to arbitration. I understand that by agreeing to arbitration I waive any right I may have to sue or seek a jury trial. The decision of the arbitrator will be final and binding.

(ECF No. 55-4 at 7). In the copy submitted to this Court, this paragraph is followed by an empty signature line and a sentence requesting that the recipient return a signed copy to the Human Resources Department. (*Id.*) What Defendant did not attach, however, are any signed arbitration agreements—either for the listed declarants, or for anyone else. As a result, Defendant "essentially ask[s] this Court to determine that mandatory arbitration bars the claims of putative collective members who are not yet before this Court and who lack the opportunity to defend against arbitration." *Hogan*, 2023 WL 5745439, at *10. This Court declines that invitation. The fact that JSW Steel appears to have presented its employees with a handbook containing an arbitration clause does not necessarily render all putative collective members bound to arbitrate, particularly as Defendant has not presented this Court with evidence that any arbitration provisions were in fact signed. *See Masco Corp. v. Zurich Am. Ins. Co*., 382 F.3d 624, 627 (6th Cir. 2004) (explaining that, before compelling arbitration, a court must find that "a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."); *see also Gifford,* 2023 WL 2923498, at *1 (finding that an alleged arbitration agreement that was not countersigned was insufficient to compel arbitration). Ultimately, since Defendant seems unable to produce even a single signed arbitration agreement or acknowledgment, "it cannot make a *prima facie* showing of the existence of a binding arbitration agreement, at least for purposes of providing notice of the collective action at this stage of the litigation." *Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL

13

6459641, at *13 (M.D. Tenn. Nov. 3, 2020) (rejecting argument that employees who had not signed arbitration agreement should not be given notice of the suit).

This Court therefore concludes that the evidence Plaintiff presents, showing that other production employees at Defendant's facilities were unlawfully denied compensation under the "pay to shift" policy, is sufficient to establish a "strong likelihood" that those employees are "similarly situated" to Plaintiff.

### C. Notice

Having determined that facilitation of notice to other production employees at JSW Steel facilities in Ohio is warranted, the Court now turns to the form and manner of the proposed notice. It is important to recall that conditional approval of an FLSA collective "simply allows the sending of court-approved written notice to employees who must then affirmatively opt in to the litigation." *Taylor v. Pilot Corp.*, 697 F. App'x 854, 860 (6th Cir. 2017) (citation omitted). The notices, however, "must not 'in form or function' resemble 'the solicitation of claims.'" *Clark*, 68 F.4th at 1010 (quoting *Hoffmann-La Roche*, 493 U.S. at 174). Accordingly, the Court should refrain from sending notices "to employees who are not, in fact, eligible to join the suit"; instead, notice "should be sent only to employees who are in fact similarly situated." *Id.* (citing *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 434 (5th Cir. 2021)). It is also important to recall that "[t]he very point of the 'similarly situated' inquiry is to determine whether the merits of the other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" *Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

At the outset, Plaintiff's Motion to Facilitate Notice requests that this Court send notice of the litigation to the following collective:

> All current and former Ohio hourly, non-exempt production employees of Defendant who were paid for forty (40) or more hours of work in any workweek beginning March 3, 2019 and continuing through the final disposition of the case

(ECF No. 41 at 1), which captures a group relevant to both of his FLSA claims. But, as discussed above, Plaintiff only raises arguments regarding his first FLSA claim—the "pay to shift" claim in his Motion. *See supra* Part IV.B. In fact, he explicitly disavows any intention to address his second FLSA claim—the "overtime rate" claim. (*See* ECF No. 41 at 1 n.1).

Plaintiff's draft notice, however, addresses all individuals who match the following description:

> [A] current or former hourly production employee of JSW Steel USA Ohio, Inc. ("JSW") who works/worked at any of its Ohio facilities and: (i) performed work either prior to the scheduled start of your shift or after the scheduled end of your shift for which you were not paid during any workweek in which you were paid for at least forty (40) hours; or (ii) received a bonus payment in any workweek in which you were paid for more than forty (40) hours, beginning March 3, 2019 and through the present.

(ECF No. 41-1 at 1). This language appears to reference both FLSA claims pled in the First Amended Complaint. (*See* ECF No. 37). In other words, Plaintiff effectively asks this Court to bless collective litigation of the "overtime rate" claim without providing this Court with any reason to believe that the employees he would seek to include are "similarly situated" such that collective litigation of that claim would facilitate efficient resolution of the issue.

Plaintiff's assertion that he may do so is entirely misguided and without basis. In his initial Motion, he attempts to justify his decision not to seek "conditional certification" on his second claim by explaining that employees are "similarly situated" when they "suffer from a *single* FLSA-violating policy." (*See id.*) (citing *O'Brien*, 575 F.3d at 585) (emphasis added). But Plaintiff

15

misunderstands this language from *O'Brien*. Plaintiffs are "similarly situated" with respect to a FLSA-violating policy when they can show that they are each subject to a single policy that is common to all of them. It is not the case, as Plaintiff suggests, that they are "similarly situated" such that they can proceed on any FLSA claim against their employer as a collective, simply because they have shown that they are "similarly situated" for the purposes of one FLSA-violating policy.

Plaintiff's second citation on this issue is to a decision from this Court, in which he claims that the Court allowed "plaintiff [to] seek relief on a second FLSA-overtime claim . . . after only specifically pleading a first, different claim." (ECF No. 47 at 6) (citing *Douglas v. Aspen Mgmt. USA, LLC*, No. 2:19-cv-05568, 2022 WL 306982, at *3–*4 (S.D. Ohio Feb. 2, 2022)). That, however, is not what this Court said in *Douglas*. It is in fact directly at odds with this Court's conclusion that "Plaintiffs sufficiently pled class wide FLSA overtime violations"—*i.e.*, the claim that Polen now describes as an unpled, "second" allegation—in their complaint. *Douglas*, 2022 WL 306982, at *4. To the extent that Plaintiff argues that this Court in *Douglas* permitted the plaintiffs to proceed as a collective on a claim that was not a part of their motion for "conditional certification," *Douglas* was decided before *Clark*, which has since increased the evidentiary burden on plaintiffs at this stage.

There is no dispute that Plaintiff does not ask the Court to find that JSW Steel's production employees are "similarly situated" for purposes of litigating his second FLSA claim; he acknowledges as much. (ECF No. 47 at 5–6). Nor can the policies that Plaintiff challenges in these claims be conceived of as part of the same policy, even if defined at a high level of generality; one policy allegedly results in compensation for too few hours, whereas the other results in compensation at too low an hourly rate. *Cf. Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th

16

Cir. 2017) (concluding that three policies all aimed at time-shaving constituted one high-level policy). His backdoor attempt to facilitate notice without judicial approval and without any showing that the employees to whom he wants to send notice are "similarly situated" is therefore denied. Within fourteen (14) days, Plaintiff may either: (1) revise and resubmit the proposed notice form to remove language that references the "overtime rate" claim; or (2) show a strong likelihood that the group he seeks to notify is also "similarly situated" as to the allegedly FLSA-violating "overtime rate" policy.

On the other hand, Plaintiff is permitted to include a list of individuals who have filed consents to join this action in the notice form. Defendant, who objects to the proposed notice on that basis, has provided no explanation for its assertion that such practice is "highly irregular," when in fact this Court has often approved notices with such lists. *See, e.g.*, *Mudrich*, 2022 WL 4395678 at *6. In addition, the numerous caveats in the proposed notice, stating that "the Court has made no finding as to the merits of this Case at this time," are sufficient to assuage Defendant's fears that the listing of employees who have opted-in would "give the appearance the case is meritorious." (ECF No. 47 at 7; ECF No. 41-1 at 1).

Finally, this Court turns to the date that Plaintiff includes in the proposed notice as the earliest possible date of accrual—March 3, 2019—which the parties do not dispute. A FLSA claim must be "commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years[.]" 29 U.S.C. § 255(a). For potential opt-in plaintiffs, the statute of limitations is not tolled when the original plaintiff files suit, and an action commences only when the opt-in plaintiff "files a written consent to join the action." *McCall v. Soft-Lite L.L.C.*, No. 5:22-CV-816, 2023 WL 4904023, at *10 (N.D. Ohio Aug. 1, 2023). As a result, the notice form should indicate when the opt-in notice period

begins. But because it is inappropriate to decide at this stage whether "Defendant[] 'willfully' violated the FLSA such that the three-year statute of limitations applies" and whether "potential opt-in plaintiffs will have colorable claims for equitable tolling," it is "appropriate for the notice form to state the earliest date at which equitable tolling would be considered." *Hogan*, 2023 WL 5745439, at *13. Although courts have used "different points in litigation from which to toll the statute of limitations . . . the opt-in notice period should be measured from the filing of the motion for court-facilitated notice." *Id.* Plaintiff filed his Motion for Class Certification on December 8, 2022 (ECF No. 41), so the notice form must indicate that the opt-in notice period began, at the earliest, three years prior, on December 8, 2019.

## V. CONCLUSION

For the reasons stated more fully above, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion for Conditional Certification (ECF No. 41) and **CONDITIONALLY APPROVES** the following putative FLSA collective:

> All current and former Ohio hourly, non-exempt production employees of Defendant whose payroll records indicate they performed work either prior to the scheduled start of their shift or after the scheduled end of their shift for which they were not paid during any workweek between December 8, 2019 and present in which they were paid for at least forty (40) hours.

Defendant is **ORDERED** to provide within fourteen (14) days an electronic spreadsheet containing a roster of all individuals who fit the definition above and that includes their full names, positions, dates of employment, last known home addresses, personal email addresses, and phone numbers.

The proposed notice form, however, is **DISAPPROVED**, and the parties are further **ORDERED** within fourteen (14) days, either (1) to submit a joint proposed notice and consent to join form, modified to address the deficiencies identified herein for approval before notice shall

18

be sent, or (2) Plaintiff may elect to show a strong likelihood that the employees to which it wishes to send notice are "similarly situated" as to the "overtime rate" claim. If Plaintiff elects to modify the proposed notice and consent to join form, any outstanding objections and the grounds therefore, as well as alternative proposed language, shall be clearly stated within those documents.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: October 18, 2023**